IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

HUGH ALAN MEANS        )
                       )
    Petitioner,        )
                       )
                       )
v.                     )   No. 05-CV-490-JHP
                       )
                       )
UNITED STATES OF AMERICA, )
                       )
    Respondent.        )

**ORDER AND OPINION**

Before the Court are Petitioner Hugh Alan Means' Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 and Opening Brief in Support [Docket No. 31], the Government's Response to the Motion and Brief in Support [Docket Nos. 28, 34], Means' Response to the Government's Brief [Docket No. 36], the Government's Reply to Means' Response Brief [Docket. No. 44], and Means' Reply to the Government's Reply Brief [Docket No. 45]. For the reasons set forth below, Means' motion is DENIED.

**BACKGROUND**

In 1984, as part of the Comprehensive Crime Control Act, Congress enacted the federal murder for hire statute to punish those who make use of instruments of interstate commerce in planning or committing a murder. Until 2004, the statute read,[1] in relevant part:

---

[1] The Court notes that the language of the statute did evolve somewhat between 1984 and 2004, but the "interstate-nexus" language relevant to the instant case stayed the same from 1984 until 2004.

1

> (a) Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) <u>to use the mail or any facility in interstate or foreign commerce</u>, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.
>
> (b) As used in this section and section 1959--
>
>> (1) "anything of pecuniary value" means anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage;
>>
>> (2) <u>"facility of interstate or foreign commerce" includes means of transportation and communication</u>; and
>>
>> (3) "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

18 U.S.C. § 1958 (1996)(emphasis added). While § 1958(a) spoke in terms of a "facility *in* interstate commerce," the definitional section that followed spoke of a "facility *of* interstate commerce" and defined such a facility as including "means of transportation and communication." See 18 U.S.C. § 1958(b)(2) (1996).

This internally inconsistent language provoked some consternation in the federal courts. A minor circuit split developed, with the Fifth and Seventh Circuits holding that an interstate-nexus exists even when a facility of interstate commerce is used in a purely intrastate manner, and the Sixth and Eleventh Circuits holding that a facility of interstate commerce must actually be used in an interstate manner. On December 17, 2004, Congress amended the statute, replacing a single word of the interstate-nexus language found in part (a) of the statute so that it now reads, "to use the mail

or any facility *of* interstate or foreign commerce." 18 U.S.C. § 1958(a) (2004)(emphasis added). This minor revision removed any perceived ambiguities that arose from the previously inconsistent language used in the statute. The revision was made with little fanfare and was only noted in passing in the House Report accompanying the revised statute:

SEC. 4. CLARIFICATION OF DEFINITION.

Section 1958 of title 18, United States Code, is amended-

(1) in subsection (a), by striking "facility in" and inserting "facility of"; and
(2) in subsection (b)(2), by inserting "or foreign" after "interstate".

H.R. Rep. No. 108-505, at 8 (2004). Based upon this House Report, Congress did not see the revision as being a substantive change to the reach of the interstate-nexus element. Instead, Congress simply saw the revision as a "clarification" of what it meant all along, *ie.*, that mere use of a facility *of* interstate commerce is sufficient.

**A. Factual Background**

Hugh Alan Means is currently in federal prison serving a five year term of imprisonment for having conspired to violate the pre-2004 version of 18 U.S.C. § 1958. In early 2004, Means was engaged in an affair with a married woman, Katherine Meladie Robertson. At some point during this affair Means and Robertson began to conspire to hire a "professional" or "hitman" to murder Robertson's husband, Brett Robertson. On March 15, 2004, a cooperating witness contacted Special Agent Christopher Headrick of the FBI and informed Agent Headrick of the plot. The FBI began monitoring conversations between Means and the cooperating witness. On May 18, 2004, the cooperating witness telephoned Means and informed him that a "professional" had been found that would kill Brett Robertson for $15,000. Another conversation occurred on March 22, 2004; payment terms were discussed and Means gave the cooperating witness $5,000 to secure the "professional's"

services. A subsequent meeting was arranged on March 24, 2004. The meeting occurred at a Super Eight Motel in Van Buren, Arkansas. An FBI agent posed as the hitman. During the meeting, Means paid $5,000 to the undercover agent, as well as an additional $5,000 to the cooperating witness. Means also told the cooperating witness the name, location, and vehicle type of Brett Robertson. This information was relayed to the undercover agent that same day. The next day, March 25, 2004, Means telephoned the cooperating witness and left a voicemail message saying "I don't want to do this now or any other time. I want it to stop." Means was arrested that same day.

### B. Procedural Background

Means was charged with conspiracy to use an interstate facility in a murder for hire scheme, in violation of 18 U.S.C. § 371. Means entered into a plea agreement with the government, pled guilty to the conspiracy charge, and was subsequently sentenced to five years in federal prison. In December 2005, Means timely filed the instant motion attacking his sentence under 28 U.S.C. § 2255, claiming that his judgment and sentence were rendered without subject matter jurisdiction. Means, relying on Congress's late 2004 revision of 18 U.S.C. § 1958, argues that the Government did not prove, nor did there exist, the required interstate nexus necessary to support the federal judgment and sentence. Means argues that despite the Government's allegations that any use of a "telephone" supplied the interstate nexus necessary to support a conspiracy to commit murder-for-hire conviction, in November 2004, the federal or interstate nexus required to support a conviction for conspiracy to violate the federal murder for hire statute was actual interstate use of an interstate communication facility.

In response, the Government argues that Means' argument is not "jurisdictional" in nature. The Government argues that Means characterizes his argument as such to avoid the fact that his plea

of guilty, and accompanying admission of each element of the charged crime, precludes him from attacking his conviction on grounds of insufficiency of the evidence. Additionally, the Government argues that even if Means is allowed to attack his conviction on these grounds, there is sufficient evidence to show the requisite interstate nexus.

## DISCUSSION

In his motion, Means argues that everything the district court did in his case, including accepting his plea of guilty, is a nullity, because the court lacked subject matter jurisdiction. Other than this jurisdictional argument, Means does not otherwise contest the validity of his plea agreement, nor the waiver of appellate and habeas rights contained within. The crucial question, therefore, is whether this is in fact a jurisdictional attack, or some other form of attack perhaps precluded by Means' plea agreement.

### A. The "Jurisdictional" Attack

Subject matter jurisdiction to hear criminal cases is conferred upon federal courts by 18 U.S.C. § 3231, which states: "the district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Although the interstate nexus element of 18 U.S.C. § 1958 is often referred to as the "jurisdictional" element of the statute, it is only "jurisdictional" in the colloquial sense that without that nexus, there can be no federal crime under the statute. *U.S. v. Tush*, 287 F.3d 1294, 1297 (10th Cir. 2002). This "jurisdictional" *element* of the crime should not be confused with subject matter jurisdiction, i.e., a court's constitutional or statutory power to adjudicate a case. *Id.*

If "jurisdictional" elements of crimes *were* synonymous with subject matter jurisdiction, as Means argues, the federal court system would be thrown into disarray. In the civil context, it has

long been understood that 28 U.S.C. § 1331 gives federal courts subject matter jurisdiction to hear federal questions. Access to the federal courts is provided by the *allegation* of a federal question. Once the allegation is made, the federal court has the power to adjudicate the claim to determine whether a valid federal question actually exists. Similarly, 28 U.S.C. § 1332 gives litigants access to the federal courts so long as more than $75,000 is *in controversy*, and complete diversity exists. The pleadings and trial ultimately determine whether any litigant is actually entitled to an amount in access of $75,000, but the allegation of such an amount in controversy suffices to give the federal courts subject matter jurisdiction to adjudicate the claim. Under Means' theory, federal question and diversity jurisdiction as we know it would cease to exist. That simply cannot be the case.

In the criminal context, so long as a federal crime is *charged*, 18 U.S.C. § 3231 confers subject matter jurisdiction upon the federal courts to adjudicate the case. The trial, or in this case, plea agreement, ultimately determines whether a federal crime has actually been committed, *ie.*, whether the requisite interstate-nexus exists. In this case, the court's subject matter jurisdiction arose under 18 U.S.C. § 3231. Even had Means been charged under § 1958, the Government's burden of proving the "jurisdictional" element of that crime would not have been a prerequisite to the federal court's subject matter jurisdiction over the case, it would instead have been no different than its burden of proving any other element of a federal crime. *Hugi v. U.S.,* 164 F.3d 378, 381 (7th Cir. 1999)("proof of an interstate transaction is no different from proof of any other element of a federal crime. The nexus with interstate commerce, which courts frequently call the 'jurisdictional element,' is simply one of the essential elements of [the offense]" (quotations omitted)).

Lost in the voluminous briefing filed in this case, however, is the fact that Means did not plead guilty to a violation of 18 U.S.C. § 1958. Means instead pled guilty to violating 18 U.S.C. §

6

371, the general federal conspiracy statute. The elements of a 18 U.S.C. § 371 charge of conspiracy to commit federal murder-for-hire under 18 U.S.C. § 1958 are quite different than the elements of a simple § 1958 charge. The conspiracy charge simple requires proof of: "(1) an agreement by two or more persons to achieve the unlawful purpose of [interstate] murder-for-hire; (2) the defendant's knowing and voluntary participation in the agreement; and (3) an overt act committed by any one of the conspirators in furtherance of the conspiratorial object." *United States v. Hernandez*, 141 F.3d 1042, 1053 (11th Cir.1998); *see also U.S. v. Holveck,* 867 F.Supp. 969, 977 (D. Kan. 1994). Therefore, regardless of the semantics of Means' argument that use of a facility "in" interstate commerce, instead of a facility "of" interstate commerce, is necessary, proof of neither is necessary to sustain a conviction under § 371. What is necessary is proof of a *agreement* to violate § 1958, which by definition is an "interstate" murder-for-hire. In the present case, Means explicitly admitted to just such a agreement:

> THE COURT: Okay. The allegation is that on or about February of 2004 through – or through about March 25th, 2004, you agreed with Katherine Robertson to commit certain offenses; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And that the offense you agreed to was to use an interstate facility in a murder-for-hire conspiracy; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You did all of that willingly, knowingly and unlawfully; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understood it was unlawful, did you not?
>
> THE DEFENDANT: Yes.

> THE COURT: And you committed acts that were in furtherance of that conspiracy as alleged in the information; is that correct?
>
> THE DEFENDANT: Yes.

(Tr. Change of Plea Hr'g at 19.) This exchange certainly establishes a factual basis for Means' plea of guilty to the conspiracy charge. Once Means pled guilty in a "court which has jurisdiction of the subject matter and of the defendant, as did the court in the instant case, the court's judgment cannot be assailed on grounds that the government has not met its burden of proving so called jurisdictional facts." *Hugi,* 164 F.3d at 381 (quotation marks and citation omitted).

Therefore, because the district court had subject matter jurisdiction to adjudicate Means' case, his attack on his conviction cannot be categorized as "jurisdictional". Means is instead attacking the sufficiency of the Government's proof of an element of an offense, and not even an element of the relevant offense. Because Means pled guilty to violating 18 U.S.C. § 371, and waived all non-jurisdictional attacks on his conviction, he is precluded from bringing the instant motion.

## CONCLUSION

For the reasons set forth herein, Means' Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED this 15th day of November, 2007.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma